1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

9  PAUL CREIGHTON,              )        No. CV-F-08-1507 OWW/SMS
                                )
10                              )        MEMORANDUM DECISION AND
                                )        ORDER GRANTING IN PART AND
11              Plaintiff,      )        DENYING IN PART DEFENDANTS'
                                )        MOTION TO DISMISS CERTAIN
12        vs.                   )        CLAIMS IN FIRST AMENDED
                                )        COMPLAINT (Doc.24) AND
13                              )        DIRECTING PLAINTIFF TO FILE
   CITY OF LIVINGSTON, et al.,  )        SECOND AMENDED COMPLAINT
14                              )
                                )
15              Defendants.     )
                                )
16 _____)

17

18       Defendants City of Livingston and Richard Warne move to

   dismiss certain claims in Plaintiff's First Amended Complaint
19
   (FAC).  The FAC was filed in response to the "Memorandum Decision
20
   and Order on Defendants' Motion for Partial Judgment on the
21
   Pleadings, or Alternatively, Motion to Dismiss for Failure to
22
   State a Claim" filed on May 19, 2009 (May 19, 2009 Order; Doc.
23
   22).
24
         Defendants move to dismiss the allegation in the Second
25
   Cause of Action that Defendants violated Plaintiff's right to
26

                                  1

free association in violation of the California Constitution on the ground that the FAC does not allege facts showing that Defendants interfered with his right to associate or that Plaintiff was associated with or attempted to associate with, any particular group; the Third, Fourth, and Fifth Causes of Action for violation of California Labor Codes § 98.6, 1102.5, and 6310, respectively, on the ground that the FAC fails to allege facts showing that Plaintiff exhausted his administrative remedies with the California Labor Commissioner prior to filing this action and that the FAC fails to allege facts showing that Plaintiff has complied with the California Tort Claims Act; the Fourth Cause of Action for violation of California Labor Code § 6310 on the ground that the FAC fails to allege that Plaintiff made a bona fide oral or written complaint regarding working conditions or workplace safety.

A.   <u>Governing Standards</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 555.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully, *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court explained:

3

Two working principles underlie our decision in *Twombley.*  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitations fo the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense ... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' ....

In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the

4

1  complaint when authenticity is not contested, and matters of

2  which the court takes judicial notice.  *Parrino v. FHP, Inc*, 146

3  F.3d 699, 705-706 (9th Cir.1988).

4      B.  <u>Exhaustion of Administrative Remedies Before California</u>

5  <u>Labor Commissioner</u>.

6      With regard to the assertion that the FAC fails to allege

7  facts showing that Plaintiff exhausted his administrative

8  remedies with the California Labor Commissioner prior to filing

9  this action, Defendants refer to the following discussion in the

10  May 19, 2009 Order:

11          To properly allege exhaustion of
            administrative proceedings, a plaintiff must
12          articulate facts supporting his or her
            allegation that the relevant administrative
13          remedies have been exhausted.  *See Bowman v.*
            *Yolo County*, No. 2:08-cv-00498-GEB-EFB, 2008
14          WL 5134691, at * 2 (E.D.Cal. Aug. 4, 2008)
            (finding that the plaintiff failed to allege
15          facts supporting exhaustion of administrative
            remedies with the Labor Commissioner).  Under
16          Fed. R. Civ. P. 8(a)(2), a complaint requires
            at least some factual allegation to provide
17          'a short and plain statement of the claim
            showing that the pleader is entitled to
18          relief:'

19              While a complaint attacked by a
                Rule 12(b)(6) motion to dismiss
20              does not need detailed factual
                allegations, a plaintiff's
21              obligation to provide the 'grounds'
                of this 'entitle[ment] to relief'
22              requires more than labels and
                conclusions, and a formulaic
23              recitation of the elements of a
                cause of action will not do.
24              Factual allegations must be enough
                to raise a right to relief above
25              the speculative level.

26      *Bell Atlantic Corp. v. Twombly,* 500 U.S. 544,

555 (2007)(citations omitted).  Here, Plaintiff states only the conclusion of law that 'he exhausted all applicable administrative remedies.'  Plaintiff has alleged no facts that he filed a claim with the Labor Commissioner prior to commencing this suit, as required for administrative exhaustion under § 98.6.

...

... Plaintiff argues that he properly alleged 'exhaust[ion] [of] all applicable administrative remedies.' ... This sole conclusory allegation is not sufficient to support a § 1102.5 claim.  Because a § 1102.5 claim contains the same exhaustion prerequisite as a § 98.6 claim, Plaintiff has failed to allege any facts to support a finding that the proper administrative remedies have been exhausted, despite his use of the term 'all.'  *See Hall*, 2008 WL 5396361, at * 4 ('[E]xhaustion of the administrative remedies prescribed in § 98.7 applies to §§ 1102.5 and 98.6.'); *Bowman*, 2008 WL 3154691, at * 2 ('Since Plaintiffs have failed to allege facts showing they exhausted applicable administrative remedies, their section 1102.5 claim must be dismissed.'); *Lund v. Leprino Foods Co.*, ... 2007 WL 1775474, at *4 (E.D.Cal. June 20, 2007)('[I] order to bring a claim under section 1102.5 or 6310, plaintiff must exhaust his administrative remedies.')

In footnote 2 of the May 19, 2009 Order, the Court ruled that a claim under Section 6310 is subject to the same exhaustion requirements applicable to Sections 98.6 and 1102.5.  These claims were dismissed with leave to amend.

Paragraph 24 of the FAC now alleges:

24.  Prior to commencing this lawsuit, CREIGHTON complied with the California Tort Claims Act and he exhausted all applicable administrative remedies.  Furthermore, CREIGHTON filed a timely claim with the California Labor Commissioner addressing the

6

1        California Labor Code violations asserted
         herein.
2
3        Defendants argue that the allegations in Paragraph 24 do not

4   suffice because it does not allege facts showing that Plaintiff

5   filed his complaint with the Labor Commissioner prior to bringing

6   this action and it does not allege that he exhausted his remedies

7   with the Labor Commissioner prior to bringing this lawsuit.

8   Defendants request the Court take judicial notice of a letter to

9   the City of Livingston from the California Department of

10  Industrial Relations, Division of Labor Standards Enforcement,

11  Retaliation Complaint Investigation Unit, dated December 5, 2008:

12        This letter acknowledges receipt of the
          above-referenced retaliation complaint filed
          with this office on December 4, 2008,
13        alleging that Complainant suffered unlawful
          discrimination and/or retaliation in
14        violation of Labor Code section(s): 1102.5.

15  Defendants request the Court take judicial notice of the "Notice

16  - Investigation Completed" from the Retaliation Complaint

17  Investigation Unit dated February 24, 2009, advising that the

18  file was being closed "[a]s result to [sic] the Complainant [sic]

19  failure to cooperate with the investigation and abandoned his

20  complaint."[1]

21        Plaintiff argues that the Third, Fourth and Fifth Causes of

22  Action should not be dismissed on this ground because (1) DLSE

23  exhaustion is not a legal prerequisite to pursuing statutory

24  claims in a civil action; (2) the Defendants have misrepresented

25  ──────────────

26        [1]Plaintiff makes no objection to Defendants' request for
    judicial notice.

                              7

the nature and status of the DLSE proceedings and (3) it would be inequitable to dismiss these causes of action because it does not allow the parties to present a complete evidentiary record.

In arguing that exhaustion of administrative remedies prior to filing a civil action is not required, Plaintiff essentially seeks reconsideration of the May 19, 2009 Order.

Plaintiff requests the Court take judicial notice of a letter dated October 12, 2007 from David Lawrence Bell, attorney for the California Labor Commissioner, to James W. Johnston, Esq., an attorney in Riverside, California, in which it is stated:

> As we discussed on the telephone today, what follows is the DLSE's position regarding exhaustion of remedies before the Labor Commissioner of your claims under Labor Code section 1102.5. First, to the extent you intend to raise a common law claim of wrongful termination in violation of public policy, as expressed in Labor Code section 1102.5, exhaustion of remedies is not required prior to raising such a claim in a civil action. *See Liebert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1766.
>
> With respect to a statutory claim under Section 1102.5, several *federal* courts have held that that section requires exhaustion of remedies before the Labor Commissioner prior to commencing a statutory claim in a civil action. (*See Neveu v. City of Fresno* (E.D.Cal.2005) 392 F.Supp.2d 1159, 1179-1180; *Guttierez v. RWD Technologies* (E.D.Cal.2003) 279 F.Supp.2d 1223, 1225-1228; *Fenters v. Yosemite Chevron* (E.D.Cal.) 2006 WL 2016536, *21-23; *Romaneck v. Deutsche Asset Management* (N.D.Cal.) 2006 WL 2385327, *6-7.)
>
> These federal courts all base their determinations that Section 1102.5 requires

exhaustion before the Labor Commissioner upon the California Supreme Court's decision in *Campbell v. Regents of Univ. of California* (2005) 35 Cal.4th 311, 333.  *Campbell,* however, did not explicitly rule that Section 1102.5 requires exhaustion of the Labor Commissioner's procedures. Rather, *Campbell* held that a former employee of the Regents of the University of California was required to exhaust the Regents *internal* administrative process for handling whistleblowing claims before filing a civil action for violations of Section 1102.5.

There is some disagreement, even on the federal bench, concerning whether litigants who wish to pursue a statutory claim under Section 1102.5 must first exhaust before the Labor Commissioner.  For example, Judge England, of the U.S. District Court for the Eastern District of California has ruled that '[t]o the extent that *Neveu* interprets *Campbell* as requiring that remedies before the Labor Commissioner must necessarily be exhausted as a prerequisite to suit under § 1102.5, this Court disagrees.'  *Paterson v. California Department of General Services* (E.D.Cal.) 2007 WL 756945 *7, n.5.

There are no published state court opinions addressing whether the Labor Commissioner's procedures must be exhausted prior to raising a statutory claim under Section 1102.5 in court.  In *Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1359-1360, the court held that compliance with the procedure established by Labor Code section 98.7 was not required before an employee could pursue a statutory claim under former Labor Code section 1102.1.  In reliance on the *Murray* case, the California Court of Appeal for the Fourth District, in an unpublished opinion, held that Section 1102.5 did not require exhaustion before the Labor Commissioner.  *See Cates v. Division of Gambling and Control* (2007) 2007 WL 702229, * 11.

The DLSE's position is that the wiser course is not to require exhaustion of Labor Code section 98.7 procedures prior to raising a

statutory claim in a civil action.

Labor Code section 98.7 sets forth a statutory scheme whereby any person may file a complaint with the Labor Commissioner if that person believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner.  The provision explicitly provides that filing with the Labor Commissioner is discretionary on the part of an aggrieved employee, who 'may file a complaint' with the Labor Commissioner within six months of the alleged adverse action.  The Labor Commissioner is charged with investigating such discrimination complaints and issuing a report and determination of his or her findings.  Subsection (c) of Labor Code section 98.7 provides that if the Labor Commissioner makes a finding of discrimination and the employer does not comply with the Labor Commissioner's Determination, then the Labor Commissioner 'shall' bring an action in an appropriate court against the employer.  In other words, the decision of the Labor Commissioner is not self-executing, but requires the Labor Commissioner to bring an action in court to enforce its findings if and when an employer refuses to comply with the Labor Commissioner's determination.  If the Labor Commissioner finds in favor of the employee, the employee is free to pursue his or her claims in court.  Significantly, Section 98.7(f) provides: 'the rights and remedies provided under this section do not preclude an employee form [sic] pursuing any other rights and remedies under any other law.'

Unlike the procedures at issue in *Campbell*, the Labor Commissioner's procedures under Section 98.7 are not quasi-judicial in nature.  An employee, for example, will not be able to challenge an adverse finding by the Labor Commissioner in a writ of administrative mandate under Code of Civil Procedure section 1094.5.  The ultimate issue in a DLSE investigation pursuant to Section 98.7 is whether or not the Labor Commissioner is going to bring a civil action to enforce

10

1    the relevant statutory provision.  In light
     of the large volume of retaliation claims
2    processed by the DLSE, it does not make any
     sense to require a complainant, who is
3    represented by counsel, and is ready and able
     to bring a claim in court, to file a claim
4    with the Labor Commissioner.

5    The Legislature appears to have recognized
     this fact in its enactment of the Private
6    Attorneys General Act (Labor Code section
     2699), which provides a procedure for private
7    litigants to enforce certain provisions of
     the Labor Code.  Labor Code section 2699.3
8    contains an exhaustion provision, but it
     merely requires the litigant to give written
9    notice to the Labor Workforce Development
     Agency, which then must decide whether or not
10   it intends to investigate the alleged
     violation.  Labor Code section 2699.5 lists
11   the Labor Code sections subject to the
     procedures described in Section 2699.3, and
12   it includes Section 1102.5.[1]

13   [1]Labor Code section 2699 provides that the
     procedures described therein apply
14   '[n]otwithstanding any other provision of law
     ....'  Such language by the Legislature
15   indicates an intent to override all contrary
     law.  *Caliber Bodyworks, Inc. v. Superior*
16   *Court* (2002) 134 Cal.App.4th 365, 383, n.17.

17        Plaintiff also requests the Court take judicial notice of a

18   letter dated August 12, 2009 to Plaintiff's counsel re

19   Plaintiff's "State Case No. 11535-STORCI" from Ethera Clemons,

20   Assistant Chief, DLSE:

21        Based upon our analysis of the law, the
          Division's position is that exhaustion of
22        remedies under Labor Code Section 98.7 is not
          required prior to filing a civil action in
23        superior court.

24        Defendants object to the Court taking judicial notice of

25   this letter as not coming within Rule 201, Federal Rules of

26   Evidence, citing *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th

                                   11

Cir.), *cert. denied*, 540 U.S. 810 (2003)("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."). Defendants contend that "[t]his principle extends even more so to a letter from an agency employee that contains no analysis."

Defendants argue that the law of the case doctrine precludes Plaintiff from litigating the same issues in this case.

"As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case". *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-816 (1988). "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990). Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court or a higher court in the identical case. *Id*. "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition." *United States v. Lummi Indians*, 235 F.3d 443, 452 (9th Cir.2000). As explained in *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997):

> Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.' ... The doctrine is

> not a limitation on a tribunal's power, but
> rather a guide to discretion.

A court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.  *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir.1998).

Defendants argue that Plaintiff is making the same arguments he previously made, *i.e.,* that exhaustion is not required prior to filing suit.  The only thing new from Plaintiff is the 2007 opinion letter from the Labor Commissioner's attorney. Defendants argue that Plaintiff should not be allowed to rely on authority that was available to him when he argued the initial motion.

Defendants cite *William J. Mouren Farming, Inc. v. Great American Ins. Co.,* 2005 WL 2064129 at *15 (E.D.Cal.2005) ("Interpretations, such as those in opinion letters, policy statements, agency manuals, and enforcement guidelines, lack the force of law, and do not warrant *Chevron* style deference.'); *D'Lil v. Stardust Vacation Club*, 2001 WL 1825832 (E.D.Cal.2001):

> Under California law agency interpretations
> of statutes are entitled to limited
> deference.  *See Yamaha Corp. of America v.
> State Board of Equalization*, 19 Cal.4th 1, 11
> ... (1998)(agency's interpretation of
> statutes should be given less deference than
> agency regulations).  Informal agency
> opinions are not entitled to great weight.

13

> *See id.* at 12-13 ... (less deference can be
> given to agency decisions made without
> careful consideration); *Zapara v. County of
> Orange*, 26 Cal.App.4th 464-470 ...
> (1994)(refusing to defer to advisory opinion
> letters drafted by agency's legal staff).

*See also The Wilderness Society v. U.S. Fish & Wildlife Service*,
353 F.3d 1051, 1068 (9th Cir.2003), *amended on other grounds*, 360
F.3d 1374 (9th Cir.2004):

> [T]he weight that we are to give to an
> administrative interpretation not intended by
> an agency to carry the general force of law
> is a function of that interpretation's
> thoroughness, rational validity, and
> consistency with prior and subsequent
> pronouncements ... [O]ther relevant factors
> [include] the 'logic[] and expertness' of an
> agency decision, the care used in reaching
> the decision, as well as the formality of the
> process used.

    Defendants argue that the 2007 letter is entitled to little,
if any, weight.  Defendants refer to the DLSE website,
http://www.dir.ca.gov/dlse/dlse_opinionletters.htm, in which it
is stated that "DLSE opinion letters are advice in specific cases
only" and:

> A request for a legal opinion must be
> submitted by letter to the Chief Counsel of
> the Labor Commissioner and must contain a
> statement that there is no California
> decision or prior DLSE opinion on point and
> that you have actively researched the subject
> matter on the DLSE website ... The request
> must also contain a statement that the
> opinion is not sought in connection with
> anticipated or pending private litigation
> concerning the issue addressed in the request
> nor is the opinion sought in connection with
> an investigation or litigation between a
> client or firm and the Division of Labor
> Standards Enforcement.

14

Defendants assert that even the DLSE severely limits the use of opinion letters.  Defendants contend that the opinion letter was not prepared in a formal process:

> Unlike *Neveu* and similar cases addressing the exhaustion issue, which were litigated by adverse parties arguing both sides of the issue, the opinion letter was prepared in response to an individual's request for an opinion, with no opposition.

Defendants further argue that the opinion letter "cites no valid authority in support of its conclusion and is inconsistent with substantial authority issued before and after it was issued" and that the opinion letter "lacks rational validity in that it departs from the long established rule of law that a complainant must exhaust the administrative remedies provided to him or her." In effect, the opinion is that of a single DLSE attorney.

Plaintiff argues that the federal case authority requiring exhaustion of DLSE administrative remedies predate the October 2007 opinion letter.

This is not entirely accurate.  Cited in the May 19, 2009 Order is a 2008 decision requiring exhaustion.

Plaintiff argues that Eastern District of California authority is not unanimous on this issue, citing *Paterson v. California Dept. of Social Services*, 2007 WL 756954 at *7 n.5 (E.D.Cal.2007): "To the extent that *Neveu* interprets *Campbell* as requiring that remedies before the Labor Commissioner must necessarily be exhausted as a prerequisite to suit under § 1102.5, this Court disagrees."

15

1    Finally, Plaintiff suggests that the Court should adopt the

2  analysis of the *Campbell* decision set forth in the opinion

3  letter.

4    In *Campbell v. Regents of Univ. of California*, *supra*, 35

5  Cal.4th 311 (2005), the California Supreme Court addressed

6  "whether an employee of the Regents of the University of

7  California (the Regents) must exhaust university internal

8  administrative remedies before filing suit ... for retaliatory

9  termination" under either California Government Code § 12653(c)

10  or California Labor Code § 1102.5.  *Id.* at 317.  The Supreme

11  Court held that "the exhaustion rule requires university

12  employees to exhaust university administrative remedies before

13  proceeding to suit."  *Id.*  The Supreme Court found that the

14  Regents' broad powers under California Constitution, Article IX,

15  Section 9, include the authority to create a policy for handling

16  whistleblower claims, *id.* at 320-321.  As to the rule of

17  exhaustion of administrative remedies:

18              [T]he rule of exhaustion of administrative
                remedies is well established in California
19              jurisprudence, and should apply to Campbell's
                action.  'In brief, the rule is that where an
20              administrative remedy is provided by statute,
                relief must be sought from the administrative
21              body and this remedy exhausted before the
                courts will act.' ... The rule 'is not a
22              matter of judicial discretion, but is a
                fundamental rule of procedure ... binding
23              upon all courts.' ... We have emphasized that
                'Exhaustion of *administrative* remedies is "a
24              jurisdictional prerequisite to resort to the
                courts.'" ... 'The gist of *Westlake, Rojo*,
25              and *Moreno* is a respect for internal
                grievance procedures and the exhaustion
26              requirement where the Legislature has not

> specifically mandated its own administrative review process ....' ... The exhaustion rule extends to employees seeking judicial review of an employer's administrative findings ....
>
> The rule has important benefits: (1) it serves the salutary function of mitigating damages; (2) it recognizes the quasi-judicial tribunal's expertise; and (3) it promotes judicial economy by unearthing the relevant evidence and by providing a record should there be a review of the case ....
>
> As the Court of Appeal noted, the administrative remedies exhaustion rule has several exceptions, including, but not limited to, those Campbell raises: (1) when the administrative agency cannot provide an adequate remedy, and (2) when the subject of controversy lies outside the agency's jurisdiction ... These exceptions remain flexible and are by no means limited to those discussed here ....

*Id.* at 321-322.  After rejecting Campbell's claims that the administrative remedy provided by the Regents was inadequate, *id.* at 323-324, the Supreme Court addressed Campbell's contention that neither Government Code § 12653(c) nor Labor Code § 1102.5 required her to exhaust administrative remedies and that the Legislature intended to abrogate the exhaustion requirement for actions such as hers.  With regard to Labor Code § 1102.5:

> Labor Code section 1105 states, 'Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter.'  Campbell contends that this provision, together with the chapter's silence on administrative remedies, the effect of which we discuss *ante*, at page 326, means that employees need not satisfy any exhaustion requirement before they file a lawsuit under Labor Code section 1102.5.

> But this contention also ignores the provision's context. Labor Code section 1103 provides misdemeanor criminal penalties for a violation of the chapter. Labor Code section 1104 makes the employer responsible for the acts of all managers, agents, and employees '[i]n all prosecutions under this chapter.' The placement of Labor Code section 1105 immediately after the provisions for criminal prosecution of violations of the chapter seems intended to preserve employees' rights to file civil complaints for such violations. The context of Labor Code section 1105, as well as the past 60 years of California law on administrative remedies, argues against its abrogating the exhaustion requirement.
>
> In addition, Labor Code section 1102.5's silence on the exhaustion requirement does not change our interpretation. As discussed *ante*, at page 327, and as *Torres* recognized, 'courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication.' ....

*Id.* at 329. The Supreme Court rejected Campbell's assertion that the legislative history of Assembly Bill No. 3486, codified as Labor Code § 1106, showed that the Legislature intended Labor Code § 1102.5 to except public employees from the administrative exhaustion requirement, *id.* at 330-331, and rejected Campbell's argument that she should be able to choose between seeking an administrative remedy and a judicial remedy, *id.* at 331, and her argument that requiring public employees to exhaust administrative remedies violates equal protection of the laws. *Id.* at 332.

Campbell does not specifically hold that exhaustion of administrative remedies available before the Labor Commissioner

18

is a prerequisite to suit.   In *Murray v. Oceanside Unified School Dist*, 79 Cal.App.4th 1338 (2000), decided before *Campbell*, a high school teacher brought an action seeking damages for discrimination in violation of Labor Code § 1101 *et seq*. (precluding an employer from engaging or participating in politics or becoming a candidate or controlling or directing the political activities or affiliations of employees).   The Court of Appeal addressed exhaustion of administrative remedies:

> In *Liebert* [*v. Transworld Systems, Inc.*], *supra,* 32 Cal.App.4th at page 1704, the Court of Appeal noted that Labor Code sections 1101, 1102 and 1102.1 are silent regarding administrative remedies.  It continued: 'Section 98.7, a more recent addition to the Labor Code, provides: "[a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any provision of this code under the jurisdiction of the Labor Commissioner *may* file a complaint with the division [Division of Labor Standards Enforcement] ..." ([Lab.Code,] § 98.7, subd. (a), italics added.)   The section outlines a process of investigation and decision by the Labor Commissioner .... [S]ubdivision (f) states: "The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other provision of law."' (32 Cal.App.4th at p. 1704.)  In *Liebert*, the court did not decide whether exhaustion of Labor Code administrative remedies was a precondition to the bringing of a direct statutory cause of action, as the plaintiff had misleadingly pled such exhaustion had occurred (even though it had not in fact been done).   (*Id.* at p. 1698.)   The court instead based its decision that an aggrieved employee need not exhaust administrative remedies prior to bringing a nonstatutory claim (wrongful discharge in violation of public policy or IIED) on the facts that the administrative remedies were nonexclusive and it would

1    violate public policy to restrict the
     bringing of such nonstatutory claims only to
2    those cases where some administrative
     remedies had been pursued.  (*Id.* at pp. 1706-
3    1707.)

4    As applied here, *Liebert* ... imposes no
     requirement that Murray have proceeded
5    through the Labor Code administrative
     procedures in order to pursue her statutory
6    or nonstatutory claims.  The legislative
     history of Labor Code section 1102.1, as
7    enacted in 1992, indicates that the Governor,
     in his message on signing the bill,
8    anticipated that such administrative
     procedures through the Labor Commissioner
9    would be employed in pursuing such a cause of
     action.  However, that requirement was not
10   made express in the statute ....

11   In *Lloyd v. County of Los Angeles*, 172 Cal.App.4th 320 (2009),

12   the plaintiff brought claims for retaliation in violation of

13   Labor Code §§ 6310 and 6311, of Labor Code §§ 98.6, 1102.5,

14   6399.7, and of Government Code § 8547.  The Court of Appeal held

15   that there is no requirement that plaintiff exhaust the Labor

16   Code administrative remedy prior to suit:

17       Labor Code section 98.7 provides in relevant
         part: 'Any person who believes he or she has
18       been discharged or otherwise discriminated
         against in violation of any law under the
19       jurisdiction of the Labor Commissioner *may
         file* a complaint with the division within six
20       months after the occurrence of the
         violation.'  (*Id.*, subd. (a), italics added).
21       'Each complaint of unlawful discharge or
         discrimination shall be assigned to a
22       discrimination complaint investigator who
         shall prepare and submit a report to the
23       Labor Commissioner based on an investigation
         of the complaint.'  (*Id.*, subd. (b).)  If the
24       Labor Commissioner 'determines a violation
         has occurred, he or she shall notify the
25       complainant and respondent and direct the
         respondent to cease and desist from the
26       violation and take any action deemed

20

necessary to remedy the violation, including, where appropriate, rehiring or reinstatement, reimbursement of lost wages and interest thereon, payment of reasonable attorney's fees ... and the posting of notices to employees.' (*Id.*, subd. (c).)  If the Labor Commissioner 'determines no violation has occurred, he or she shall notify the complainant and respondent and shall dismiss the complaint ....  *The complainant may, after notification of the Labor Commissioner's determination to dismiss a complaint*, *bring an action in an appropriate court*, which shall have jurisdiction to determine whether a violation occurred, and if so, to restrain the violation and order all appropriate relief to remedy the violation.  Appropriate relief includes, but is not limited to, rehiring or reinstatement of the complainant, reimbursement of lost wages, and interest thereon, and other compensation or suitable relief as is appropriate under the circumstances of the case.' (*Id.*, subd. (d)(1), italics added.).  Finally, subdivision (f) of Labor Code section 987. provides: '*The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other law.*' (Italics added.).  Therefore, it would appear Labor Code section 98.7 merely provides the employee with an additional remedy which the employee may choose to pursue.

Further, case law has recognized there is no requirement that a plaintiff proceed through the Labor Code administrative procedure in order to pursue a statutory cause of action. (*Daly v. Exxon Corp., supra*, 55 Cal.App.4th at p. 46 [suit under Lab. Code, § 6310 alleging retaliation for complaint of unsafe working conditions]; *Murray v. Oceanside Unified School Dist., supra*, 79 Cal.App.4th at p. 1339 [suit under Lab. Code former § 1102.5 relating to sexual orientation discrimination].)  We see no reason to differ with these decisions and to impose an administrative exhaustion requirement on plaintiffs seeking to sue for Labor Code violations.

21

> We make the additional observation that construing Labor Code section 98.7 to obligate a plaintiff to seek relief from the Labor Commissioner prior to filing suit for Labor Code violations flies in the face of the concerns underlying the Labor Code Private Attorneys General Act of 2004 (PAG Act) (Lab.Code, § 2698 et seq.).  As we stated in *Dunlop v. Superior Court* (2006) 142 Cal.App.4th 330, 337 ..., the PAG Act was adopted to augment the enforcement abilities of the Labor Commissioner with a private attorney general system for labor law enforcement.  'The Legislature declared its intent as follows: '(c) Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future. [¶] (d) *It is therefore in the public interest to provide that civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general*, while also ensuring that state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken pursuant to this act.' ... The PAG Act's approach, enlisting aggrieved employees to augment the Labor Commissioner's enforcement of state labor laws, undermines the notion that Labor Code section 98.7 compels exhaustion of administrative remedies with the Labor Commissioner.

172 Cal.App.4th at 331-332.[2]

The cases relied upon by the Court in the May 19, 2009 Order were all federal district court decisions relying on *Campbell* to conclude that exhaustion of administrative remedies is required

---

[2]Although not officially published, *Cates v. Division of Gambling and Control,* 2007 WL 702229 at * 11 (2007), followed *Murray v. Oceanside Unified School Dist.,* and distinguished *Campbell* in holding that exhaustion of administrative remedies before the Labor Commissioner is not a prerequisite to suit for violations of Labor Code § 1102.5.

before the Labor Commissioner.  No California decision requires
as a prerequisite to suit for statutory violation of the Labor
Code exhaustion of administrative remedies before the Labor
Commissioner.  California case law is to the contrary.  By its
terms, *Campbell* only held that exhaustion of *internal*
administrative remedies is required; there is no discussion in
*Campbell* of exhaustion of administrative remedies before the
Labor Commission.

　　　"The task of a federal court in a diversity action is to
approximate state law as closely as possible in order to make
sure that the vindication of the state right is without
discrimination because of the federal forum."  *Gee v. Tenneco*,
615 F.2d 857, 861 (9th Cir.1980).  In doing so, federal courts
are bound by the pronouncement of the state's highest court on
applicable state law.  *Davis v. Metro. Prod., Inc.*, 885 F.2d 515,
524 (9th Cir.1989).  Absent such a decision, a federal court must
predict how the highest state court would decide the issue using
intermediate appellate court decisions, decisions from other
jurisdictions, statutes, treatises, and restatements as guidance.
*Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir.1998).
However, where there is no convincing evidence that the state
supreme court would decide differently, a federal court must
follow the decisions of the state's intermediate appellate
courts.  *Id.*  Here, two decisions, albeit one unpublished, have
ruled after *Campbell*, that for statutory labor law claims,
exhaustion of administrative remedies before the Labor

23

Commissioner is not required.   Counsel for the Labor Commissioner
has opined in another matter that exhaustion of administrative
remedies before the Labor Commissioner is not a prerequisite to
suit for statutory violations of the Labor Code.

Based on this intermediate appellate case law and the limits
of *Campbell*, reconsideration of the prior ruling is appropriate.
Exhaustion of administrative remedies before the Labor
Commissioner before filing suit for statutory violations of the
Labor Code is not required under California law.

Defendants' motion to dismiss the Third, Fourth and Fifth
Causes of Action of the FAC is DENIED.

C.   <u>Compliance with Claim Requirement of California Tort
Claims Act</u>.

Defendants move to dismiss the Third, Fourth and Fifth Cause
of Action because Paragraph 24 of the FAC fails to allege facts
from which it may be inferred that Plaintiff timely complied with
the claim requirement of the California Tort Claims Act.

Plaintiff requests the Court take judicial notice of the
letter dated August 29, 2008 from Jesse J. Maddox of the law
firm, Liebert, Cassidy and Whitmore, counsel for Defendants in
this action, to Plaintiff's counsel, stating:

> I am sending this letter on behalf of the
> City of Livingston.   Notice is hereby given
> that the Claim you presented to the City on
> behalf of Paul Creighton on July 8, 2008 for
> monetary damages in connection with Mr.
> Creighton's termination from his position as
> Public Works Director, was rejected in its
> entirety.   The City Council rejected the
> Claim on August 18, 2008.   The minutes from

1          the City Council's August 18, 2008 meeting
           will be approved by the Council at its
2          September 16, 2008 meeting.  If you would
           like a copy of the minutes after they have
3          been approved, please let me know.

4          Subject to certain exceptions, Mr. Creighton
           has only six months from the date this notice
5          was deposited in the mail to file a court
           action on this Claim.  (See Gov. Code §
6          945.6).

7  Plaintiff contends this acknowledges the fact of and admits that

8  Defendants are well aware that he timely filed a tort claim.

9      Defendants, represented by Mr. Maddox, who wrote the letter

10 on behalf of the City of Livingston, object to the Court taking

11 judicial notice.  Defendants assert that "a letter from one

12 attorney to another is not a 'fact' 'not subject to reasonable

13 dispute.'"  Finally, Defendants argue, Plaintiff has not

14 authenticated the letter and, therefore, is requesting the Court

15 to take judicial notice of hearsay.  Defendants argue that the

16 allegation in Paragraph 24 is still conclusory:

17         Whether Defendants have knowledge is
           irrelevant; there is no such exception to the
18         requirement that a plaintiff plead facts,
           rather than a legal conclusion, in a
19         complaint.  To argue otherwise is tantamount
           to a discrimination complainant arguing that
20         he or she does not have to allege that he or
           she is a member of a protected class because
21         the employer already knew of the protected
           class.
22
23     Paragraph 24 of the FAC alleges that "[p]rior to commencing

24 this lawsuit, CREIGHTON complied with the California Tort Claims

25 Act."  Given the pleading requirements set forth in *Twombley* and

26 *Iqbal*, Defendants' motion to dismiss the Third, Fourth and Fifth

1  Causes of Action for failure to allege the specific dates on

2  which Plaintiff filed his tort claim and on which the tort claim

3  was rejected is GRANTED WITH LEAVE TO AMEND.

4       D.   <u>Violation of California Labor Code § 6310</u>.

5       Defendants move to dismiss the Fifth Cause of Action for

6  violation of California Labor Code § 6310.  In the May 19, 2009

7  Order, the Court dismissed Plaintiff's Section 6310 claim with

8  leave to amend:

9           Plaintiff argues that the complaint
             sufficiently establishes a § 6310 claim
10           because § 6310 is broadly construed, citing
             *Cabesuela v. Browning-Ferris Industries of*
11           *California, Inc.*, 68 Cal.App.4th 101, 109
             (1998) ... In that case, the plaintiff, a
12           truck driver, alleged that the defendant
             terminated his employment for complaining
13           about long driving hours, which he believed
             posed a hazard to the employee truck drivers
14           and others.  *Id.* at 108-09.  The court
             determined that this allegation was
15           sufficient to withstand a demurrer to the §
             6310 claim because the plaintiff reasonably
16           believed that the working conditions -
             driving long hours - were unsafe.  *Id.* at
17           109.

18           This case is distinguishable from *Cabesuela*.
             Unlike *Cabesuela*, where driving long hours
19           was alleged to create an unsafe working
             conditions [sic] for defendant's employee
20           truck drivers, Plaintiff does not allege any
             facts indicating that he was exposed to
21           'unsafe working conditions, or work
             practices, in his ... employment or place of
22           employment' as required under § 6310(b) or
             make assertions related to 'employee safety
23           or health' under § 6310)(a)(1).  Plaintiff
             alleges that the hazard of contaminated water
24           posed a public health risk to the residents
             of the City of Livingston and users of its
25           water supply ... This risk, although public
             in nature, does not satisfy § 6310's
26           requirement that the employee complain of

                                26

unsafe working conditions or an unsafe
workplace.  *See Lujan v. Minagar*, 124
Cal.App.4th 1040, 1043 (2004) ('Section 6310
makes it unlawful to fire or otherwise
retaliate against an employee who makes a
workplace safety complaint with government
agencies.').

Plaintiff further argues that the alleged
facts create numerous inferences that support
a § 6310 claim, including: Plaintiff 'may
have believed that City employees could be
exposed to contaminated water while working
in Livingston; that [Plaintiff] may have made
complaints to government agencies about the
water quality; or even that Warne fired
[Plaintiff] because he believed [Plaintiff]
may complain about those issues in the
future.' ... None of these inferences support
a conclusion that Livingston maintained a
hazardous or unsafe working environment for
Plaintiff, comparable to *Cabesuela*.

Plaintiff amended his Section 6310 claim by adding the
following allegation:

48.  CREIGHTON's speech and activity
concerning the POLLUTED WELL was protected
activity under California Labor Code § 6310
as he alleges on information and belief that
WARNE and/or LIVINGSTON believed that
CREIGHTON made workplace health and safety
complaints concerning the water supply used
by LIVINGSTON employees while those employees
worked in LIVINGSTON-owned buildings, and/or,
that CREIGHTON would do so in the future.

Defendants contend that, armed with knowledge of the

pleading deficiencies in the Complaint, Plaintiff again fails to

allege that he made a bona fide oral or written complaint

regarding unsafe working conditions or an unsafe workplace, which

is a requirement under the plain language of Labor Code §§

6310(a)(1) and (b).

Plaintiff opposes the motion, citing *Lujan v. Minagar*, 124

27

Cal.App.4th 1040, 1046 (2004), as authority that an employee need not make a complaint to be covered by Section 6310.  Relying on *Lujan*, Plaintiff makes the identical argument based on inferences rejected by the May 19, 2009 Order.

In *Lujan*, a beauty salon owned by Sheila Minagar was inspected and cited for several workplace safety violations under Cal-OSHA, Labor Code §§ 6300 *et seq*.  The inspection came in response to a complaint by Susan Grana, who worked as a facialist at the salon.  Minagar fired both Grana and hair stylist Noelle Dianella that same day.  The Labor Commissioner cited Minagar for firing Dianella in retaliation for the Cal-OSHA complaint.  Minagar's appeal to the Department of Industrial Relations was rejected and Minagar was ordered to rehire Dianella with backpay.  When Minagar refused to comply, the Labor Commissioner sued to enforce his order.  At trial, Grana and Dianella testified that Dianella played no part in contacting Cal-OSHA inspectors.  According to Dianella, salon manager Pam Evans told her she had been fired because it was believed Dianella assisted Grana with the complaint.  Dianella testified that after speaking with Evans, she telephoned Minagar, who told Dianella she must have known of the investigation because she was Grana's good friend and should have warned Minagar about it.  Minagar testified that she knew Dianella had not filed the Cal-OSHA complaint and that she fired Dianella for incompetence and troublemaking.  124 Cal.App.4th at 1042-1043.  The trial court found that Dianella was fired in retaliation for the conduct of Grana, that Grana's

complaint was a substantial factor in the decision to fire

Dianella and that Dianella would not have been fired but for that

complaint.   Nonetheless, because Dianella had not herself made a

Cal-OSHA complaint, the trial court found that the jurisdictional

prerequisites of Section 6310 had not been satisfied and

dismissed the action.   The Court of Appeal reversed:

> Only one reported California decision has
> addressed the jurisdictional prerequisites of
> section 6310.   The court in *Division of Labor
> Law Enforcement v. Sampson* (1976) 64
> Cal.App.3d 893 ... held that because section
> 6310 as written applied to workers who
> actually made a workplace safety complaint to
> a government agency, the statute did not
> cover a worker who instead claimed he was
> fired after making informal safety complaints
> to his employer.   (*Sampson* at pp. 897-898).
> While the restrictive approach taken by
> *Sampson* seems contrary to the result urged by
> the Commissioner, neither party has cited
> that decision.   Instead, the Commissioner
> points to federal cases interpreting the
> similarly worded anti-retaliation provisions
> of different federal statutes.   (*Sauers v.
> Salt Lake County* (10th Cir.1993) 1 F.3d 1122,
> 1127-1129 ... [prima facie case of
> retaliation in sex harassment case existed
> where evidence showed supervisor reassigned
> the plaintiff because he feared should would
> bring a harassment claim); *U.S.E.E.O.C. v.
> Bojangles Restaurants, Inc.* (M.D.N.C. 2003)
> 284 F.Supp.2d 320, 328 [title VII
> antiretaliation provision applies to
> anticipatory retaliation, including employers
> who fire workers they fear will bring such
> claims].)   Because Cal-OSHA is patterned
> after its federal counterpart (*Hentzel v.
> Singer Company, supra*, 138 Cal.App.3d at p.
> 300 [comparing Cal-OSHA with 29 U.S.C. § 651
> et seq. (OSHA)]), and because the federal
> OSHA statute is similar to other federal
> antiretaliation laws, the Commissioner urges
> us to follow these federal authorities.
> (*Alcala v. Western Ag. Enterprises* (1986) 182
> Cal.App.3d 546, 550 ... [when California laws

1                      are patterned after federal statutes, federal
                   decisions interpreting the federal provisions
2                      are persuasive authority].)

3                      We do not believe the restrictive approach
                   taken in *Sampson* ... applies.  *Sampson* is
4                      factually distinguishable because the issue
                   was whether informal complaints to the
5                      employer sufficed, not whether preemptive
                   termination to head off a complaint was
6                      actionable.  The decision is also
                   inapplicable because it did not consider the
7                      extent to which section 6310 should be
                   liberally construed or whether the
8                      restrictive interpretation produced an absurd
                   result .... the Court held:
9                      We agree with the Commissioner that firing
                   workers who are suspected of planning to file
10                     workplace safety complaints can effectively
                   discourage the filing of those complaints.
11                     We also agree that allowing such preemptive
                   retaliation would be at odds with section
12                     6310's apparent intent - to encourage such
                   complaints and to punish employers who
13                     retaliate against employees as a result ...
                   To hold otherwise would create a perverse
14                     incentive for employers to retaliate against
                   employees who they fear are about to file
15                     workplace safety complaints before the
                   employees can do so, therefore avoiding
16                     liability under section 6310.  We do not
                   believe the Legislature could have possibly
17                     intended such an absurd result ... We
                   therefore hold that section 6310 applies to
18                     employers who retaliate against employees
                   whom they believe intend to file workplace
19                     safety complaints.

20  *Id.* at 1044-1046.

21      Defendants argue that *Lujan* does not obviate the requirement

22  that Plaintiff plead facts, not conclusions:

23                     Plaintiff's pure speculation that the
                   Defendants feared he might file a complaint
24                     is far-fetched and factually unsupported.

25  Defendants argue that *Lujan* is distinguishable because in *Lujan*,

26  there was a legitimate inference that the employer retaliated

against the plaintiff out of fear he might file a complaint because other employees had actually filed workplace safety complaints.  Defendants further argue that *Lujan* is at odds with the plain language of Section 6310, which prohibits retaliation against an employee who has made a bona fide oral or written complaint.

Defendants' attempt to distinguish *Lujan* on the ground that another employee in *Lujan* had made a workplace safety complaint, while no such complaint was made by any City employee is unavailing.  Pursuant to *Lujan*, an employer who terminates an employee because the employer fears a workplace safety complaint under Cal-OSHA will be filed is actionable under Section 6310; *Lujan* cannot be limited to its specific facts.  Defendants' argument that *Lujan* is at odds with the plain language of Section 6310 ignores that Section 6310 is liberally construed and federal case authority construes similar statutes as covering terminations in anticipation of a retaliation complaint.

As to Defendants' contentions that Paragraph 48 is speculative and unsupported by any factual allegations, Paragraph 21 alleges that Plaintiff expressed concerns to City officials that "WARNE's plan to delay the water rate study approval until after City elections and the need to get the water rate study approved immediately to protect the health and safety of LIVINGSTON residents, as well as, CITY employees and other persons that are impacted by the CITY's water supply."  This allegation is identical to the allegation in the Complaint.

1    These allegations are sufficient to state a claim even if

2    Plaintiff may have trouble proving that he was fired because of

3    his anticipated complaint that the polluted well would cause

4    unsafe working conditions as well as pose a hazard to the

5    residents.  This is not the stage of the litigation to test the

6    provability of the claim.

7        Defendants' motion to dismiss the Fifth Cause of Action is

8    DENIED.

9        E.   Right of Free Association.

10       Defendants move to dismiss the Second Cause of Action that

11   Defendants violated Plaintiff's right to free association in

12   violation of California Constitution, Article I, §§ 2 and 3, on

13   the ground that the FAC does not allege facts showing that

14   Defendants interfered with his right to associate or that

15   Plaintiff was associated with or attempted to associate with, any

16   particular group.[3]

17       The FAC alleges:

18           21.  Because CREIGHTON believed that WARNE
             was ignoring, and exacerbating, a serious
19           potential health hazard, CREIGHTON told
             LIVINGSTON Mayor Pro Tem and City Council
20           person William Ingram ... and LIVINGSTON
             Councilmemeber Rodrigo Espinoza ... about the
21           POLLUTED WELL, the health risks posed by the

22   ─────────────────

23       [3]Article I, § 2 of the California Constitution provides that
     "[e]very person may freely speak, write and publish his or
24   sentiments on all subjects, being responsible for the abuse of this
     right.  A law may not restrain or abridge liberty of speech or
25   press."  Article I, § 3 of the California Constitution provides
     that "[t]he people have the right to instruct their
26   representatives, petition government for redress of grievances, and
     assemble freely to consult for the common good."

                                  32

1
2
3
4
5
6

> situation, WARNE's plan to delay the water
> rate study approval until after City
> elections and the need to get the water rate
> study approved immediately to protect the
> health and safety of LIVINGSTON residents, as
> well as, CITY employees and other persons
> that are impacted by the CITY's water supply.
> These discussions occurred at non-LIVINGSTON
> owned property, during off-duty time and were
> not part of CREIGHTON's Public Works Director
> duties.

7 Paragraph 22-23 alleges that Warne learned about Plaintiff's

8 conversations described in Paragraph 21 and fired Plaintiff

9 without prior notice.  The Second Cause of Action alleges that

10 Defendants violated Plaintiff's constitutional right to free

11 speech and association under the California Constitution "by

12 terminating his LIVINGSTON employment because of his

13 communications and dealings with LIVINGSTON City Councilpersons

14 detailed above."

15      Defendants cite cases involving the right of association

16 protected under the First Amendment to the United States

17 Constitution.  They cite no authority construing the right of

18 association protected by the California Constitution.

19      As explained in *Villegas v. City of Gilroy*, 363 F.Supp.2d

20 1207, 1218-1219 (N.D.Cal.2005), *aff'd*, *Villegas v. Gilroy Garlic*

21 *Festival Ass'n*, 541 F.3d 950 (2008):

22
23

> The First Amendment protects two distinct
> types of 'association': 'intimate
> association' and 'expressive association.'

24
25
26

> In one line of decisions, the Court
> has concluded that choices to enter
> into and maintain certain *intimate
> human relationships* must be secured
> against undue intrusion by the

33

> State because of the role of such
> relationships in safeguarding the
> individual freedom that is central
> to our constitutional scheme.  In
> this respect, freedom of
> association receives protection as
> a fundamental element of personal
> liberty.
>
> *Roberts*, 468 U.S. 609, 617-618 ... (1984) ...
> This is the freedom of intimate association.
> 'In another set of decisions, the Court has
> recognized a right to associate for the
> purpose of engaging in those activities
> protected by the First Amendment - speech,
> assembly, petition for redress of grievances,
> and the exercise of religion.'  *Id.* at 618
> ... This is the freedom of expressive
> association.
>
> The freedom of expressive association is at
> issue here.  'The constitutional right to
> free association for expressive purposes is
> an *instrumental* one; expressive association
> is protected as an indispensable means of
> preserving *other individual liberties* ... In
> other words, to determine whether a group is
> protected by the First Amendment's expressive
> associational right, a court must first
> determine, as a preliminary matter, whether
> that group engages in 'expressive
> association' otherwise protected by the First
> Amendment.

Defendants argue that no facts are alleged in the FAC from which it may be inferred that Defendants interfered with Plaintiff's intimate or expressive association rights because Plaintiff does not allege that Defendants interfered with his right to associate with a particular group or interfered with the expressive activity of any group to which Plaintiff belongs.

Plaintiff has not responded to this ground for dismissal. The Court concludes that Plaintiff concedes he has not stated a claim upon which relief can be granted in the Second Cause of

34

1  Action.

2      Defendants' motion to dismiss the Second Cause of Action is

3  GRANTED WITHOUT LEAVE TO AMEND.

4                          CONCLUSION

5      For the reasons stated:

6      1.  Defendants' motion to dismiss certain claims in the

7  First Amended Complaint is GRANTED IN PART AND DENIED IN PART;

8      2.  Plaintiff shall file a Second Amended Complaint within

9  20 days of the filing date of this Memorandum Decision and Order.

10     IT IS SO ORDERED.

11 Dated:    October 7, 2009            _____/s/ Oliver W. Wanger_____
                                       UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26